**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BROOKE W. MURPHY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ERIC G. ZAJAC and ZAJAC, ARIAS & TRICHON, P.C.<br><br>　　　　Defendants. | Civil Action No. 13-cv-04981(JLL) (JAD)<br><br>**OPINION AND ORDER** |

JOSEPH A. DICKSON, U.S.M.J.

This matter comes before the Court upon Defendants, Eric G. Zajac and Zajac, Arias & Trichon P.C., (collectively "Defendants"), renewed Motion to Transfer Venue to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a) (the "Motion to Transfer"), (ECF No. 44), and Plaintiff's counsel's Motion to Withdraw. (ECF No. 49). In accordance with Rule 78 of the Federal Rules of Civil Procedure, no oral argument was heard on either Motion.[1] Upon consideration of the parties' submissions, and for the reasons stated

---

[1] On August 8, 2014 the Court issued an Order stating that the pending Motion to Withdraw and the renewed Motion to Transfer would be heard on October 28, 2014. (ECF No. 50). The hearings were then rescheduled to October 9, 2014. (ECF No. 51). Plaintiff Murphy sent a letter to the Court dated September 11, 2014, certain portions of which were redacted by the Court in order to safeguard Plaintiff's confidential medical information. (ECF No. 53). Plaintiff Murphy requested to be excused from the hearing and further stated that he has "no objection and completely consent to Mr. Vort's resignation as [his] personal attorney, or that of Meadowlands Company, immediately." (Id.). Plaintiff Murphy went on to state that, "[a]s Mr. Vort has formally requested to withdraw as attorney for Brooke Murphy and Meadowlands Company, with this letter he and his firm are hereby released as counsel in this matter immediately as they have requested." (Id.). Defendants responded on September 30, 2014 indicating that "Defendants are unaware of and find no good cause to excuse Brooke Murphy's personal attendance on October 9, 2014." (ECF No. 54). In an Order dated October 6, 2014, the Court adjourned the October 9, 2014 conference

below, Defendants' renewed Motion to Transfer is **GRANTED**. Plaintiff's counsel's Motion to Withdraw is also **GRANTED**. This matter will be transferred to the United States District Court for the Eastern District of Pennsylvania and Robert A. Vort, Esq., shall be released as counsel.

### I.     BACKGROUND AND PROCEDURAL HISTORY

This is a breach of contract action brought by Plaintiff, Brooke W. Murphy[2], a New Jersey citizen, against Defendants, all citizens of Pennsylvania. (Amended Complaint, ECF No. 48, at 1). Plaintiff alleges to have contracted[3] with a non-party, Raymond Rubino, Esq., (hereinafter "Mr. Rubino"), a New Jersey attorney, "in connection with his representation of the plaintiff[4] in an action entitled Gilvary v. General Motors Corp. and Pompey Motors, Inc.,[5] in consideration for defendants' promise to pay for his services." (Complaint, ECF No. 1, ¶ 1). In the Gilvary matter, Ms. Gilvary, a Pennsylvania resident, was involved in an automobile accident in Pennsylvania and suffered substantial injuries. (ECF No. 8-2 at 2; ECF No. 8-3, at 3, ¶ 12). This underlying action was brought in the Court of Common Pleas of Philadelphia County. (Answer to Amended Complaint, ECF No. 24, at 3).

---

without date. (ECF No. 55). Furthermore, the Court stated that "Defendants unopposed Motion to Transfer, (ECF No. 44), is under consideration due to changed circumstances, which necessitates a re-review of the public and private factors that our case law requires Courts to consider." (Id.). Although Plaintiff Murphy sent another letter to the Court dated October 9, 2014 personally objecting to transferring the case, such objection was not made through his counsel and therefore, not considered by the Court.

[2] While Plaintiff in this case filed suit as "Meadowlands Company," the record reflects that Plaintiff, Brooke W. Murphy in fact renders accident investigative services under the trade name, "Meadowlands Company". (See Cert., ECF No. 11, ¶ 1). Plaintiff filed an Amended Complaint on February 11, 2014, (ECF No. 23), properly titling the caption to include himself as the named Plaintiff.

[3] Hereinafter the "Investigation Contract" or the "Contract."

[4] Sarahjuan Gilvary, hereinafter "Ms. Gilvary."

[5] Hereinafter the "Gilvary" matter.

Plaintiff claims that Defendants filed a substitution of attorney replacing Mr. Rubino, rendering them liable under the Contract. (Id. at ¶ 2). Plaintiff claims that he continued to provide investigatory services for Defendants, and based on the agreement made with Mr. Rubino (and subsequently assigned to Defendants), Plaintiff billed Defendants the amount of $169,770.00, which remains outstanding. (Defs.' Br., ECF No. 8, at 2).

On March 2, 2012 Defendants filed an initial Motion to Transfer[6] the action to the United States District Court for the Eastern District of Pennsylvania. (ECF No. 8). Defendants argued that dismissal, or in the alternative transfer, was appropriate for both the convenience of the parties and witnesses and in the interests of justice because: (i) there is no proper basis for venue in New Jersey pursuant to 28 U.S.C. § 1391; (ii) no substantial act or omission that forms the basis of this action arose in New Jersey; (iii) all the claims in this case are based upon conduct in Pennsylvania where all Defendants reside; and (iv) Pennsylvania is the most convenient forum. (Id. at ). Plaintiff opposed the Motion on the grounds that: (i) Plaintiff's choice of forum in the District of New Jersey is entitled to great deference; (ii) the matter has a meaningful connection to New Jersey inasmuch as the agreement at issue was made by Plaintiff, a New Jersey citizen, with Mr. Rubino, in New Jersey; and (iii) a substantial part of the events at issue occurred in New Jersey. (Pls.' Opp., ECF No. 11, at 1-2).

This Court issued a Report and Recommendation on April 17, 2014 recommending that Defendants' initial Motion to Transfer, (ECF No. 8), be denied. (ECF No. 35). When considered as a whole, this Court reasoned that the action originated from a contract that was executed in New

---

[6] Defendants' Motion to Transfer, (ECF No. 8), was filed as a Motion to Dismiss, or in the alternative, transfer venue. However, because Defendants argued for dismissal for lack of venue pursuant to 28 U.S.C. 1406(a), the Court reviewed both motions in conjunction as the Motion to Transfer. (Def. Br., ECF No. 8-2, at 1 and 4).

Jersey. (Id. at 5). This Court noted, however, that the action could have originally been brought in the Eastern District of Pennsylvania, and thus engaged in a balancing of public and private factors. (Id.). The primary private interests at issue were Plaintiff's choice of forum, where the claim arose, and the convenience of the parties and witnesses. (Id. at 6). This Court went through each factor and found: (i) "Defendants failed to overcome the presumption in favor of Plaintiff's choice of forum," (ECF No. 35, at 6); (ii) "that the substantial performance of the contract cannot be deemed to have occurred in either New Jersey or Pennsylvania independently, but rather weighs neutrally," (Id. at 7); (iii) that "[h]aving considered where the Contract at issue was allegedly negotiated, executed, performed, and breached, the Court finds that this factor weighs neutrally at best in transferring this case and therefore does not aid the Defendants in overcoming the presumption in favor of Plaintiff's choice of forum," (Id. at 8); (iv) and finally "neither party was able to offer evidence suggesting that any witness would be unavailable for trial, including Ms. Givalry, in either forum, as opposed to merely being affected by the distance.[7]" (Id. at 9).

This Court further noted that the public interests[8] weighed against transferring the case. (Id.). Defendants argued that practical considerations that could make the trial easy, expeditious or inexpensive were apparent, as this case stems from the trial in <u>Givalry v. General Motors Corp. and Pompey Motors, Inc.</u>, which was conducted in Pennsylvania. (citation omitted) (Def.' Br., ECF No. 8 at 9). At the time, this Court did not agree because the breach of contract claim for investigatory services performed related to the <u>Givarly</u> matter had little to no connection with

---

[7] See <u>Days Inns Worldwide, Inc. v. Ram Lodging, LLC</u>, No. 09-2275 (SDW), 2010 WL 1540916 (D.N.J. Apr. 14, 2010).

[8] This Court found the following <u>Jumara</u> factors to be of neutral value, and as Defendants did not argue their relevance, as is their burden, the Court did not incorporate them into the analysis: the enforceability of the judgment; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases. <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 879-80 (3rd Cir. 1995).

4

the *trial* in Pennsylvania. (ECF No. 35, at 9). Ultimately, this Court concluded that Defendants did not meet their burden in demonstrating that it would be more convenient for all the parties to have this case litigated and tried in the Eastern District of Pennsylvania and recommended that Defendants' Motion to Transfer, (ECF No. 8), be denied. (ECF No. 35, at 10).

Defendants appealed the Report and Recommendation on May 1, 2014 and argued that a transfer was in fact warranted because Ms. Gilvary, the "intended beneficiary of this contract, could be liable to [Plaintiff] Murphy from the funds held in escrow on her behalf." (ECF No. 37-2, at 12-13). In addition, Defendants argued that Ms. Gilvary could not be brought into this action "by any party because she is a Pennsylvania citizen [and] [t]his Court lacks personal jurisdiction over her." (Id. at 13). As such, Defendants asserted that transferring the matter to the Eastern District of Pennsylvania would best serve the interests of justice." (Id.).

The Hon. Jose L. Linares, U.S.D.J. issued an Order on June 4, 2014 adopting this Court's Report and Recommendation. (ECF No. 42). Judge Linares noted that Defendants' argued "this matter should be transferred because the disposition of this matter *could* implicate interests of the plaintiff in the underlying action." (Id. at 10) (emphasis in original). Judge Linares, however, found the argument to be unpersuasive because "it [was] premised on a hypothetical scenario." (Id.). Judge Linares further noted that Defendants did not argue that Ms. Gilvary was a necessary party under Federal Rule of Civil Procedure 19. (Id.). Therefore, the fact that this litigation *may* have impacted the interests of Ms. Gilvary in the underlying action was insufficient to overcome Plaintiff's choice of forum in the District of New Jersey. (Id.).

In response to Judge Linares' Order, "Defendants promptly filed a declaratory judgment action in the Court of Common Pleas entitled Zajac and Arias, LLC In Trust for Sarahjuan Gilvery vs. Brooke Murphy d/b/a/ Meadowlands Company et. al., June Term 2014 No. 2569. The escrow

account holding the settlement proceeds [were] impleaded along with all parties with claims to the funds." (ECF No. 44, at 5). On June 27, 2014 Defendants filed a renewed Motion to Transfer. (Id.). Defendants incorporate by reference the legal arguments made in the initial Motion to Transfer, (ECF No. 8), and all responsive briefs, (ECF Nos. 26, 30, and 37). (ECF No. 44, at 6). Furthermore, Defendants argue that certain facts that have occurred since Judge Linares highlighted the "hypothetical" nature of Defendants' concerns, are significant to this renewed Motion to Transfer. (Id.). Defendants posit that the Court of Common Pleas of Philadelphia has the power to fully determine the rights and liabilities of all interested parties and that any ancillary issues should be heard in the Eastern District of Pennsylvania. (Id.). Defendants claim that "Ms. Gilvary indicated that she will not willingly participate in this Court's proceedings . . . and cannot be joined because this Court lacks personal jurisdiction." (Id. at 5) (citation omitted).

## II.  LEGAL ANALYSIS

### a.  The Legal Standards Applicable on a Motion to Transfer Under § 1404(a)

Defendants ask the Court to transfer this action to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). That statue provides, in pertinent part, that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of § 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal quotations and citations omitted). The decision of whether to transfer a case is committed to the trial court's sound discretion. Cadapult Graphic Sys. v. Tektronix, Inc., 98 F. Supp. 2d 560, 564 (D.N.J. 2000); Days Inns Worldwide, Inc. v. RAM Lodging, LLC, No. 09-2275, 2010 WL 1540926, at *2 (D.N.J. April 14, 2010).

Additionally, the moving party bears the burden of establishing the need to transfer. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3rd Cir. 1995).

In determining whether to transfer a matter pursuant to § 1404(a), and based on the plain language of that statute, a court must consider: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. Rappoport v. Steven Spielberg, Inc., 16 F. Supp. 2d 481, 497 (D.N.J. 1998). In addition to these statutory factors, the United States Court of Appeals for the Third Circuit has established a list of public and private interests that a court should examine when deciding whether to transfer an action:

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Jumara, 55 F.3d at 879-80.

The Court must, therefore, engage in a two part analysis to determine whether any motion to transfer venue should be granted. As a threshold matter, the Court must decide whether the transferee district has proper jurisdiction and venue, such that the case could have been brought in the transferee district in the first instance. Lawrence v. Xerox Corp., 56 F. Supp. 2d 442, 450 (D.N.J. 1999). The Court must then conduct an "individualized, case-by-case consideration of convenience and fairness" regarding which forum is most appropriate to consider the case. Id.

"There is no rigid rule governing a court's determination; 'each case turns on its facts.'" Id. (citing Lacey v. Cessna Aircraft Co., 862 F.2d 38, 43 (3d Cir. 1988) (internal citations omitted); Rappoport, 16 F. Supp 2d at 498 ("Transfer analysis under Section 1404 is a flexible and individualized analysis and must be made on the unique facts presented in each case.") (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249-250 (1981)). The Court is also mindful of the Third Circuit's admonition against any court considering the merits of a case during the pendency of a transfer application. McDonnell Douglas Corp. v. Polin, 429 F.2d 30 (3d Cir. 1970) ("Judicial economy requires that another district court should not burden itself with the merits of the action until it is decided that a transfer should be effected and such consideration additionally requires that the court which ultimately decides the merits of the action should also decide the various questions which arise during the pendency of the suit instead of considering it in two courts").

### III. ANALYSIS

#### a. The Initial Motion to Transfer

This Court previously found that although the instant matter could have been brought in the Eastern District of Pennsylvania, the District of New Jersey is in fact a proper venue. (ECF No. 35, at 5). This Court also examined both the private and public factors and found that although many of the factors weighed neutrally, or were unaddressed by Defendants, when taken as a whole, the case should not be transferred. (Id.).

#### b. New Factors Now Weigh in Favor of Transfer

Defendants' renewed Motion to Transfer, (ECF No. 44), contains new facts that the Court must now consider when balancing the private and public factors as is required by Jumara. Defendants initially argued that a transfer is warranted because Ms. Gilvary is allegedly the intended beneficiary of the Contract and, therefore, "*could be* liable to [Plaintiff] from the funds

8

held in escrow on her behalf." (ECF. No. 37-2, at 12-13) (emphasis added). In adopting this Court's Report and Recommendation, Judge Linares found Defendants' argument to be unpersuasive because it was based on a hypothetical scenario. (ECF No. 42, at 10). Following Judge Linares' Opinion, (ECF No. 42), Defendants filed a declaratory action in the Court of Common Pleas, where "the escrow account holding the settlement proceeds [were] impleaded along with **all** parties with claims to the funds." (ECF No. 44, at 5) (emphasis in original). As a result, Defendants' argument that disposition of this case *could* implicate the interests of Ms. Gilvary is no longer based on a hypothetical scenario. (See ECF No. 42, at 10). In fact, the reality of Ms. Gilvary's involvement weighs in favor of transferring the action to the Eastern District of Pennsylvania.

Furthermore, while Defendants argue that Ms. Gilvary has been unwilling to participate in this Court's proceedings, (ECF No. 44, at 5), Ms. Gilvary sent a letter to the Court expressing otherwise.[9] Additionally, Defendants assert that Ms. Gilvary cannot be joined to this action because this Court lacks personal jurisdiction over her. (ECF No. 44, at 6). However, Ms. Gilvary's letter to the Court indicated that any assertions that she is unwilling to accept service or be involved in this case is "not true" and that she could be "served with court papers at anytime" and she is "always home." It is, however, unclear whether Ms. Gilvary is consenting to personal jurisdiction in this matter, thereby defeating the thrust of Defendants' argument that this Court does not have the power to fully determine the rights and liabilities of all interested parties, (see

---

[9] Ms. Gilvary, in an undated letter to the Court stated, "I recently learned that Meadowlands and Brooke Murphy's former lawyer, Mr. Vort said to you that I was not willing to accept service or to be involved in this case. This is not true. I want nothing more than to come to court on this case and see that a wrong is righted. I can be served with court papers at anytime. I am always home." Additionally, Ms. Gilvary stated that she "fully intend[s] to be involved in this case. [She] told Mr. Murphy and [her] mother several times that [she] want[s] to come to court and testify for Mr. Murphy." (ECF No. 57, at 1).

9


ECF No. 44, at 6), or whether Ms. Gilvary is simply stating she is willing to testify on Mr. Murphy's behalf. The Court has also recently been made aware that Ms. Gilvary is the daughter of Plaintiff's wife, (ECF No. 49-1, at 4, ¶ 11), information that only complicates the matter further. Plaintiff's family connection to the plaintiff in the underlying Pennsylvania action changes the complexion of this matter, which Plaintiff previously argued was all about New Jersey

Regardless of Ms. Gilvary's involvement, the Court finds it more significant that Plaintiff has been less than forthcoming about his address, not having provided one, and he has not authorized "his attorney to accept service for him in the declaratory judgment action" in Pennsylvania. (Id. at 5) (citing Exhibit B, ECF No. 44). Additionally, the Court finds it significant that the Defendants are now involved in a dispute with Ms. Gilvary over the settlement proceeds in Pennsylvania.[10] (see ECF No. 44, at 5). Those settlement proceeds may well constitute a large portion of the monies that will be paid to Plaintiff, should he prevail. The Pennsylvania connections to this dispute appear to grow daily. After careful consideration of the new facts, the balance of the public and private factors now weigh in favor of a transfer to the United States District Court for the Eastern District of Pennsylvania.

c. **Motion to Withdraw**

Plaintiff's counsel, Mr. Vort submitted a Motion to Withdraw on August 4, 2014. (ECF No. 49). As explained above, a hearing was not held, but Plaintiff submitted multiple letters to the Court, one of which consented to his counsel's withdrawal. (ECF No. 53). Plaintiff counsel's

---

[10] Defendants' explained in a footnote in their renewed Motion to Transfer that, "Ms. Gilvary's medical bills were paid for by the Pennsylvania Department of Public Welfare. The Department's lien is well in excess of the settlement proceeds. Exhibit A, Zajac Declaration; Lien. An attorney has a legal responsibility to notify and hold settlement proceeds for the Department of Public Welfare. 62 P.S. 1409(b)(9). Defendants cannot distribute the money to either party without notifying the Department." (ECF No. 44, at 5 n.1).

Motion to Withdraw was unopposed. The Court has considered the parties' submissions and finds there is good cause to relieve Mr. Vort as counsel.

## IV. CONCLUSION

For the reasons set forth above, and for good cause shown;

IT IS on this _____ day of December 2014,

**ORDERED** that Plaintiff's attorney's Motion to Withdraw as counsel, (ECF No. 49), is **GRANTED**; and

**IT IS FURTHER ORDERED** that Robert A. Vort, Esq. is terminated as attorney of record for Plaintiff; and

**IT IS FURTHER ORDERED** that Robert A. Vort, Esq. shall provide Plaintiff with a copy of this Order; and

**IT IS FURTHER ORDERED** that Defendants Renewed Motions to Transfer, (ECF No. 44), is **GRANTED**, and this matter shall be transferred to the United States District Court for the Eastern District of Pennsylvania; and

**IT IS FURTHER ORDERED** that Plaintiff provide the Clerk of the Court in the Eastern District of Pennsylvania with all the required contact information, including his address and phone number; and

**IT IS FURTHER ORDERED** that Plaintiff shall sign up for electronic filing with the Eastern District of Pennsylvania within 30 days of the case being opened in the Eastern District of Pennsylvania.

**SO ORDERED**

_____
JOSEPH A. DICKSON, U.S.M.J.

11

cc:     Hon. Jose L. Linares, U.S.D.J.